UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DONNELL WILLIAMS,

               Plaintiff,

v.

HEIDI WASHINGTON et al.,

               Defendants.

_____/

Case No. 2:18-cv-144

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bauman, Immel, Master, Huble, Contresrass, Lancour, Monticello, Johns, Olsen, Corey, Robinson, Haase, Thompson, Deary, Haske, Bennett, Newton, Butler, Wonnacott, Durant, Brown, Miller, McLean, Bigger, Wilkins, Shimmelpenny, Dewit, Cicco, McKinney, Stabiel, Lemmerman, Washington, Carlson, Salisbury, the Quartermaster Staff, the Property Room Staff, the Alger Correctional Facility, and the Chippewa Correctional Facility. The action will proceed

with respect to Defendant Belanger, but, only with respect to Plaintiff's claim that Defendant Belanger, when he wrote an Interference with the Administration of Rules Class II misconduct against Plaintiff on July 24, 2018, retaliated against Plaintiff for Plaintiff's exercise of his First Amendment rights.

## Discussion

### I.    Factual Allegations

Plaintiff Donnell Williams is presently incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF). Plaintiff is serving several sentences, the longest of which—75 to 125 years—was imposed by the Berrien County Circuit Court on August 20, 2010. The events about which he complains occurred at URF and the Alger Correctional Facility (LMF) in Munising, Michigan. The time period spans the nearly one year period beginning October of 2017 and running until the filing of this Complaint on August 24, 2018.

Plaintiff's complaint (ECF No. 1) names 12 individual defendants who are or were employed at LMF: Warden Catherine S. Bauman; Deputy Warden Unknown Immel; Prisoner Counselors Unknown Master and Unknown Huble; Inspector Jeff Contresrass; Grievance Coordinator Unknown Lancour; Sergeants Unknown Monticello and Unknown Johns; Corrections Officers Scott Olsen, Samantha Corey, Unknown Robinson, and Unknown Haase. The caption of Plaintiff's complaint also lists the Alger Correctional Facility as a Defendant. Plaintiff's allegations against the LMF Defendants are based on their conduct from October 18, 2017, the date Plaintiff arrived at LMF, to his February 26, 2018, transfer to URF.

Plaintiff names 20 individual defendants[1] who are or were employed at URF: Resident Unit Manager Unknown Thompson; Psychologist Dik A. Deary; Registered Nurses Tiffany Haske and Maria Bennett; Prisoner Counselors Unknown Newton, Unknown Butler[2], and Unknown Wonnacott; Hearing Investigator Unknown Durant; Inspectors Unknown Brown and Unknown Miller; Grievance Coordinator McLean; Lieutenants Unknown Bigger and Unknown Wilkins; Sergeant Unknown Belanger; Corrections Officers Unknown Shimmelpenny, Unknown Dewit, Unknown Cicco, C. McKinney, Unknown Stabiel, and Unknown Lemmerman. Plaintiff also names two groups of unidentified defendants from URF: Property Room Staff and Quartermaster Staff. The caption of Plaintiff's complaint also lists the Chippewa Correctional Facility as a Defendant. Plaintiff's allegations against the URF Defendants are based on their conduct from February 26, 2018, the date Plaintiff arrived at URF, to August 24, 2018, the date he filed his complaint.

Plaintiff also names three Defendants who are administrative employees of the MDOC: Director Heidi Washington, Prison Rape Elimination Act (PREA) Manager Charles Carlson, and Northern Regional PREA Supervisor Matthew Salisbury.

## A. Allegations Against the LMF Defendants: October 2017 to March 2018

Plaintiff arrived at LMF on October 18, 2017. He was transferred to LMF from the Michigan Reformatory (RMI) in Ionia, Michigan. Plaintiff was transferred to facilitate Plaintiff's

---

[1] Plaintiff also references as possible Defendants two additional URF employees: Horton and Blemke. (Compl., ECF No. 1, PageID.11-12.) Because Plaintiff did not include Horton or Blemke as Defendants in his caption or his list of Defendants, the Court has not addressed Plaintiff's claims against them. Including the claims, however, would not change the misjoinder analysis. It would just add two names to the list of misjoined Defendants.

[2] In the caption and in Plaintiff's list of Defendants, Plaintiff indicates that Defendant Butler (or Bulter, Plaintiff provides two spellings), is one of the LMF Defendants. Plaintiff also puts Defendant Stabiel in the LMF category. Plaintiff's factual allegations, however, only reference Defendants Butler and Stabiel after Plaintiff's transfer to URF. Accordingly, the Court has included Defendants Butler and Stabiel as URF Defendants.

participation in a civil rights trial in the Northern Division of this Court. The Court ordered the

MDOC to bring Plaintiff to the Northern Division Courthouse for the trial:

**TO: MICHIGAN DEPARTMENT OF CORRECTIONS**

> We command that you have Donnell Williams #225280, detained under your custody, under safe and secure conduct, at the United States District Court, Second Floor Courtroom, 202 W. Washington St., Marquette, Michigan, on **October 23, 2017 at 9:00 a.m., EST**, as a Plaintiff in the above-entitled cause, to be returned to his place of confinement under safe and secure conduct after conclusion of the case.

*Williams v. Olson et al.*, No. 2:14-cv-206 (W.D. Mich. Oct. 4, 2017) (Writ of Habeas Corpus, ECF

No. 85, PageID.572). The minutes of the nine-minute bench trial read as follows:

> Bench trial: opening statements waived by both parties; Plaintiff rests without presenting evidence; Defendants' motion for judgment as a matter of law pursuant to FRCP Rule 50 is granted and case dismissed.

*Williams*, (W.D. Mich. Oct. 23, 2017) (Minutes, ECF No. 92, PageID.589). After the trial, Plaintiff

was returned to LMF.

Plaintiff alleges that by transferring him to LMF, Defendant Heidi Washington

disobeyed the writ's command to return Plaintiff "to his place of confinement . . . " and that she

did so to retaliate for Plaintiff's lawsuit. Plaintiff argues that the writ required that he be returned

to RMI. Plaintiff's argument is utterly without merit. The MDOC is free to confine Plaintiff

wherever it chooses. The writ does not address the location of Plaintiff's confinement, only his

presence at the trial and his eventual return to MDOC confinement.

Plaintiff's return to LMF put him in contact with Defendant Olsen, who was also

one of the defendants in the case concluded on October 23, 2017. Plaintiff alleges he was

"Harassed, Intim[id]ated, and Retaliated against" by Olsen and his co-workers. (Compl., ECF

No. 1, PageID.4.)

On October 26, 2017, Plaintiff filed a grievance against Defendants Washington and Bauman for violating the writ. The grievance was never processed. Plaintiff "suffered daily Harassment, Intimidation, and retaliation, from all defendant[s] named and unnamed." (*Id.*)

On November 1, 2017, Plaintiff filed a grievance against Defendant Lancour for violating Plaintiff's due process rights by failing to process Plaintiff's October 26 grievance against Defendants Washington and Bauman. Plaintiff forwarded the grievance against Lancour to Defendant Contresrass.

On November 7, 2017, Defendant Corey call Plaintiff "stupid."

Thereafter Plaintiff became the target of repeated cell searches, at least three times per week, by Defendants Olsen, Robinson, and Haase. Defendants performed the cell searches "in retaliation for their co-worker." (*Id.*, PageID.5.) Plaintiff tried to file a PREA grievance, but Defendant Lancour denied Plaintiff's request.

On November 13, 2017, Plaintiff filed a Step II grievance against Defendants Bauman, Immel, and Master for violation of the writ. Defendants Lancour and Immel rejected the grievance as untimely.

On November 27, 2017,[3] Defendant Corey "Harassed, Intimidated, and retaliated" against Plaintiff because Plaintiff had filed a PREA grievance against her. (*Id.*) Defendant Lancour rejected the grievance.

On December 14, 2017,[4] Defendant Olsen made Plaintiff open his religious meal tray. By looking through the contents of the meal, Plaintiff claims Defendant Olsen contaminated

---

[3] Plaintiff actually alleges that the event happened on November 27, 2018. *Id.* At ¶ 22. However, that is a date after the filing of his Complaint and an obvious mistake. The context indicates Plaintiff means to be talking about November 27, 2017.

[4] Plaintiff actually alleges that the event happened on December 14, 2018. *Id.* At ¶ 23. However, that is a date after the filing of his Complaint and an obvious mistake. The context indicates Plaintiff means to be talking about December 14, 2017.

the tray and the food. Defendant Johns denied Plaintiff's grievance about the incident "in retaliation for his subordinate." (*Id*.) Johns told Plaintiff religious meals would be searched daily thereafter. Defendant Bauman denied Plaintiff's grievance at Step II. Bauman issued a memo indicating that prisoners who received religious meal trays would have to open them in front of staff members.

On January 5, 2018, Defendant Olsen called Plaintiff a "jackass" and "stupid." (*Id*., PageID.6.)

On January 19, 2018, Defendant Johns interviewed Plaintiff on the resulting grievance. Defendant Johns "Harassed, Intimidated, and Retaliated" against Plaintiff for Johns' subordinate. (*Id*.) Johns told Plaintiff he would deny all of Plaintiff's grievances. Plaintiff grieved Johns for that. Defendants Lancour and Bauman rejected all of Plaintiff's grievance appeals.

On January 27, 2018, Defendant Olsen told Plaintiff that he had an "Apple Bottom Ass" and started singing the apple bottom song. (*Id*.) Plaintiff puts the comment in context by explaining that Olsen had previous patted Plaintiff down numerous times to sexually harass and intimidate Plaintiff for filing grievances. It appears, however, that the "patdowns" referenced may have occurred during Plaintiff's previous stay at LMF.

On February 13, 2018, Plaintiff filed a complaint with the Michigan State Police claiming he had been sexually abused by prison staff. The complaint prompted a PREA investigation by Defendant Monticello who denied the complaint. Monticello asked Plaintiff if he wanted to go back to segregation and then Baraga. (*Id*., PageID.7.) Plaintiff's grievance regarding the issue was never processed by Defendant Lancour.

On February 25, 2018, Plaintiff was told to pack up his property because he was transferring to another facility. The next day he was transferred to URF.

Plaintiff claims that Defendants Washington, Bauman, Master, and Huble transferred Plaintiff in retaliation for Plaintiff's PREA grievances against Defendants Olsen and Corey. Plaintiff amended his pending PREA grievance to include that claim. He sent the additional claim to Defendant Contresrass.

On March 2, 2018, Plaintiff filed a complaint with the Michigan State Police claiming that he had been sexually harassed and retaliated against for pointing out criminal behavior. Plaintiff does not specify the incidents of harassment or retaliation at issue; however, the timing of the complaint suggests that he was complaining about the LMF incidents described above.

### B. Plaintiff's Allegations Against the URF and PREA Defendants: March 2018 to Filing of Complaint

Plaintiff arrived at URF while the facility was under quarantine because of a flu virus. Plaintiff did not get his property for three days. Plaintiff complained to Defendant Butler that he had a special accommodation for contact lenses and that Plaintiff did not have soap, toothpaste, or deodorant for three days. Plaintiff apparently grieved Butler.

The same day, Defendant Stabiel required Plaintiff to sign an inventory cell check sheet. Plaintiff refused. Stabiel threatened to send Plaintiff to segregation for refusing to lock down because Plaintiff would not sign the sheet. Plaintiff grieved Stabiel. The grievance was never processed.

Plaintiff claims the unknown property-room staff went through his legal property footlocker without Plaintiff being present. He also claims that the unknown staff took grievances, a copy of Plaintiff's complaint to the Michigan State Police, and Plaintiff's television, all in retaliation for the grievance Plaintiff filed against Defendant Butler.

On March 12, 2018, URF Sergeant Belanger was interviewing Plaintiff in connection with the investigation of Plaintiff's PREA complaint about LMF Defendants Corey and Olsen. Belanger told Plaintiff that she would always take the word of her subordinates over that of a prisoner. Although Belanger's statement was not relevant to that particular investigation, Plaintiff filed a grievance against her. Defendant McLean refused to process the grievance.

On March 15, 2018, Defendant Shimmelpenny called Plaintiff a "dick sucker." (Compl., ECF No. 1, PageID.8.) Plaintiff called the PREA hotline and wrote a PREA grievance against Shimmelpenny.

On March 19, 2018, Plaintiff reports that Defendant Butler ordered Plaintiff to move to the eastside facility or to segregation. Plaintiff claims Butler gave this order in retaliation for Plaintiff's PREA grievance against Shimmelpenny. Plaintiff called the PREA hotline "numerous times" to report the retaliatory move. (*Id.*, PageID.9.) Plaintiff also filed a grievance; however, Defendant McLean refused to process it.

Plaintiff claims that, in April, 2018, the Quartermaster Staff gave him a pair of shoes that smelled very bad. Plaintiff asserts that the Quartermaster Staff gave him the shoes in retaliation for Plaintiff' exercise of his First and Eighth Amendment rights. Plaintiff filed a grievance against the Quartermaster Staff.

On April 26, 2018, Defendant Dewit called Plaintiff a "dick sucking bitch that filed the PREA report on Shimmelpenny." (*Id.*) Plaintiff filed a PREA grievance against Dewit. Defendant Belanger investigated and found insufficient evidence to support Plaintiff's allegations. So, Plaintiff filed a supplemental PREA complaint against Defendant Belanger because Belanger had said "I will always side with the people who work here over any prisoner." (*Id.*, PageID.10.)

Plaintiff also called the hotline "numerous times" to complain about Defendant Belanger and her violations of due process.

On May 22, 2018, Defendant Belanger not only rejected Plaintiff's supplemental PREA complaint, she also wrote a Class II misconduct against Plaintiff "in retaliation for [Plaintiff] calling the PREA hotline 52 times." (*Id*.)

The next day, Defendant Bigger called out Plaintiff with regard to the Class II misconduct—a charge for Interfering with Administrative Rules. Plaintiff claims Defendant Bigger told Plaintiff he would be found guilty. Accordingly, Plaintiff reported Defendant Bigger on the PREA hotline.

On May 30, 2018, Defendant Bigger found Plaintiff guilty on the misconduct and imposed a sanction of three days of top-lock. Plaintiff contends the hearing violated his due process rights.

On June 8, 2018, Defendant Wilkins investigated Plaintiff's add-on PREA claim against another MDOC employee. Plaintiff would not participate. Wilkins told Plaintiff he would have Plaintiff sent back to the eastside to be stabbed by a gang member. Plaintiff filed a complaint against Wilkins via the PREA hotline.

On June 13, 2018, Plaintiff called Defendant Washington's office "using the PREA hotline." (*Id*., PageID.11.) Plaintiff called twice, using an anonymous telephone pin number. As a result of these, or perhaps his many other calls—or in Plaintiff's terms "as retaliation for these calls"—Defendants Washington, Horton, Brown, Miller, and Newton played a role in shutting down Plaintiff's pin-number. (*Id*.) Plaintiff claims the group also had Defendant Cicco "sexually Harass, Intimidate, and retaliate" against Plaintiff. (*Id*.)

On June 14, 2018, Defendant Newton told Plaintiff to pack up and move to C-Unit. Plaintiff claims this was done in retaliation for Plaintiff's filing of a grievance against Newton and other officers in D-Unit. Plaintiff claims Newton told the C-Unit officer to "ride him," meaning to harass Plaintiff. (*Id.*)

The next day, Newton told Defendants McKinney and Lemmerman to pat Plaintiff down and get his identification number. She told the other Defendants: "this is the son of a bitch who filed a PREA grievance on Defendant Cicco, and an institutional grievance." (*Id.*) Plaintiff called the PREA hotline and filed a complaint.

On June 19, 2018, Plaintiff was called out by Defendants Haske and Bennett, and also saw Defendant Deary, regarding a confidential mental health issue. Plaintiff claims those Defendants shared the information with Defendant Belanger. Plaintiff called the PREA hotline and filed a complaint.

The next day, Defendant Cicco strip-searched Plaintiff. He told Plaintiff to bend over and spread his cheeks six times and told Plaintiff to lift Plaintiff's penis about four times. Cicco then told Plaintiff to put his fingers in his mouth. Plaintiff filed numerous complaints with the PREA hotline regarding the incident. Defendant Belanger denied the PREA grievance.

On July 3, 2018, Plaintiff saw correctional officers strip-search another inmate. He heard Sergeant Blemke tell a subordinate that they had to send the inmate to segregation on a charge of Sexual Misconduct to "cover their asses." (*Id.*, PageID.12.) Plaintiff filed a complaint with the PREA hotline. He called the PREA hotline again the next day. He sent three kites to the hearing investigator, Defendant Durant, but Plaintiff was never called as a witness for the misconduct hearing.

On July 6, 2018, Plaintiff saw Defendant Newton remove Plaintiff's third-party PREA grievance from the kite box. Newton is not even from the unit. Defendant Wonnacott should have handled the grievance. Plaintiff called the PREA hotline and filed a complaint.

On July 11, 2018, Plaintiff filed an institutional grievance against Defendant Miller, Brown, and Belanger for denying Plaintiff's PREA grievances. Plaintiff put the grievance in Defendant McLean's mailbox; McLean never processed the grievance. Plaintiff filed a complaint with the PREA hotline. The next day Plaintiff filed another grievance. This time he grieved Defendant Newton for taking Plaintiff's grievance regarding the other inmate who was strip-searched. McLean never processed the grievance.

On July 18, Plaintiff had Defendant Wonnacott notarize Plaintiff's complaint to the Michigan State Police. Wonnacott refused to send it as legal mail. Plaintiff sent it out the next day as first-class mail.

On July 24, 2018, Defendant Belanger wrote another Class II misconduct against Plaintiff for Interfering with Administrative Rules based on Plaintiff "false" PREA report against Defendant Newton on the PREA hotline. Plaintiff asked for a hearing investigator and sent Defendant Durant about five kites about the issue. On July 31, 2018, Defendant Thompson served as the hearing officer on the misconduct. Thompson found Plaintiff guilty and imposed a sanction of four days top-lock.

On July 26, 2018, Plaintiff filed a Step I grievance on Defendants Carlson, Salisbury, Horton, Brown, Miller, and Belanger, and filed numerous complaints with the PREA hotline about "the previous mentioned issues." (*Id.*, PageID.13.)

On August 1, 2018, Defendant Belanger denied Plaintiff's Step I grievance.

Plaintiff claims the actions of the Defendants violate his First Amendment right by retaliating against Plaintiff for his exercise of those rights. Plaintiff claims the Defendants' failure to protect him from retaliation and the retaliatory conduct itself violates his Eighth Amendment rights. Plaintiff asks the Court to award him compensatory and punitive damages against all Defendants totaling $50,000.00.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.     URF and LMF as Defendants

It is possible that Plaintiff listed the Alger Correctional Facility and the Chippewa Correctional Facility in the caption of his complaint solely for the purpose of putting the individual Defendants into categories; but, he did list them. To the extent Plaintiff intended to sue the Alger and Chippewa facilities, they are not proper parties. Individual prisons, like URF or LMF, are "buildings used by the MDOC to house prisoners." *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934, at *7 (W.D. Mich. Oct. 28, 2013). "They are not the proper public entity for suit." *Id.* at *7; *see also Cage v. Kent County Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) ("The district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983."); *Belcher v. Ottawa County Adult Corr. Facility*, No. 1:09-cv-173, 2009 WL 1163412, at *2 (W.D. Mich. Apr. 28, 2009) ("The Ottawa County Adult Correctional Facility is a building, not an entity capable of being sued in its own right.").

Moreover, the MDOC is not a proper substitute for the specific correctional facilities named. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).

Plaintiff's claims against the Alger Correctional Facility and the Chippewa Correctional Facility are properly dismissed.

IV.    Retaliation

Plaintiff describes virtually every action taken by the Defendants as retaliatory for Plaintiff's filing of a grievance or complaint. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken

14

against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### A. Protected Conduct

Plaintiff alleges that he filed grievances and complaints dozens of times during the 10-month period described in his complaint. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).[5] However, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court concluded in *Lewis v.*

---

[5] Plaintiff's complaints would enjoy no less protection simply because he often presented them orally. An inmate has a right to file grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, No. 17-1289, slip op. at 13 (6th Cir. Apr. 3, 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

*Casey*, "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Lewis*, 518 U.S. at 353 n.3.

Here, many of Plaintiff's grievances are patently frivolous and others are abusive. For example, Plaintiff's grievances complaining that he had been transferred in violation of the writ of habeas corpus are patently frivolous. The writ placed no limit on where Plaintiff could be housed by the MDOC. Accordingly, the grievance Plaintiff filed against Defendants Washington and Bauman, mentioned in ¶ 15 of the complaint, is frivolous. Moreover, the grievance(s) referenced in ¶¶ 16 and 17 of the complaint that Plaintiff filed against Defendant Lancour for not processing the frivolous grievance, are frivolous as well. Plaintiff filed another grievance, referenced in ¶ 20, against Defendants Bauman, Immel, and Master, claiming that they were violating the writ by keeping him at LMF. That was also frivolous. Plaintiff references a grievance filed against Washington, Bauman, Master and Huble because they violated the writ by transferring Plaintiff to URF. (Compl., ECF No. 1, PageID.8, ¶¶ 38, 39.) That grievance was also frivolous.

Defendant Corey called Plaintiff "stupid" and cautioned another corrections officer about taking Plaintiff's identification card because that officer "don't know where [Plaintiff's] hands have been." (*Id*., PageID.4, 5, ¶¶18-21.) Defendant Olsen called Plaintiff "stupid" and "a jackass." In another instance, Olsen told Plaintiff he had an "Apple Bottom Ass." (*Id*., PageID.6, ¶ 30.) Defendant Shimmelpenny called Plaintiff a "dick sucker." (*Id*., PageID.8, ¶ 41.) Defendant DeWit called Plaintiff a "dick-sucking bitch." (*Id*., PageID.9, ¶ 46.) Plaintiff filed grievances in response to all of this name-calling. The grievances were frivolous, as were the grievances Plaintiff filed for the improper handling of the name-calling grievances.

Even where the foundational grievances were not frivolous, Plaintiff filed grievances against Defendants for violating due process in the handling of the foundational grievances. Such "due process" grievances were also frivolous. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process and any grievance claiming as much was frivolous.

Additionally, Plaintiff's use of the grievance process was abusive. Defendant Belanger wrote the first Class II misconduct for Interference with the Administration of Rules not because Plaintiff complained, but because he called the PREA Hotline **52** times. (*Id.*, PageID.10, ¶¶ 50, 51.) Plaintiff does not dispute that accusation. Indeed, he alleges that in response to particular instances of Defendants' misconduct he called the PREA hotline or filed PREA complaints "numerous" times. (*Id.*, PageID.9, 12, 13, ¶¶ 42, 61, 70.) Such abuse of the grievance system is not protected conduct.

For the reasons stated above, many of Plaintiff's complaints and grievances were not "protected conduct." Nonetheless, there are also many grievances alleged that would be protected conduct.

## B.    Adverse Action

Many of the retaliatory actions alleged by Plaintiff simply do not rise to the level of "adverse action" as described in *Thaddeus-X*. For example, not processing frivolous grievances is not adverse action. Although labelling a prisoner as a "rat" or "homosexual" to incite action against him might be adverse action, simply calling Plaintiff names would not deter a person of ordinary firmness from engaging in protected conduct. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002); *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003). Plaintiff alleges no facts that would permit the Court to infer that the name-calling of which he complains was anything more than common verbal harassments. Moreover, Plaintiff's oft-repeated claim that a Defendant "harassed" or "intimidated" him, (Compl., ECF No. 1, PageID.3, 4, 5, 6, 8, 11, ¶¶ 14, 15, 22, 28, 30, 39, 56, 57), are simply too vague and conclusory to permit a determination whether a person of ordinary firmness would be deterred by the Defendants' conduct.

Plaintiff also alleges several instances of conduct that could serve as adverse action for a First Amendment retaliation claim. Plaintiff alleges cell searches, meal inspections, pat-downs, strip searches, property deprivations, threatened misconduct tickets, fungus infested shoes, and threatened transfers to more restrictive housing, including segregation. Certainly, some of these incidents are just normal parts of prison life; however, Plaintiff alleges that he was subjected to these indignities with more than normal frequency. Those allegations suffice to demonstrate adverse action.

## C.     Retaliatory Motive

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).  In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."  *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

With respect to virtually every allegedly retaliatory adverse action, Plaintiff merely says the words "retaliation" or "retaliatory" as the only support for his claims that the actions were, in fact, retaliatory for his protected conduct.  He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct.  He merely concludes that because he filed some grievances within a few days, weeks or months before Defendants' actions, their actions must have been motivated by his grievances.

The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). With just a few exceptions, Plaintiff merely alleges temporal proximity between Defendants' conduct and his many grievances. Such allegations are insufficient to state a retaliation claim.

There are a couple of instances where Petitioner provides some support for an inference of retaliatory intent, but does not link it to any deterring adverse action or conduct by Plaintiff worthy of First Amendment protection. For example, when Defendant Dewit called Plaintiff a name on April 26, 2018, Dewit specifically mentioned the PREA report Plaintiff had filed against Defendant Shimmelpenny. That mention would at least support an inference of retaliatory intent. But, the Shimmelpenny grievance only complained that Shimmelpenny called Plaintiff a name; thus, that grievance is not protected conduct. Moreover, the only adverse action undertaken when Dewit referenced the grievance was name-calling. Under the circumstances described by Plaintiff, Dewit's name-calling would not rise to the level of adverse action.

Plaintiff makes a similar claim with respect to Defendant Newton. Plaintiff claims that on June 15, 2018, Defendant Newton told Defendants McKinney and Lemmerman that Plaintiff was "the son of a bitch who filed a PREA grievance on defendant Cicco, and a[n] institutional grievance." (Compl., ECF No. 1, PageID.11, ¶ 58.) Newton told McKinney and Lemmerman to pat Plaintiff down and get his identification number. (*Id.*) Plaintiff provides no

specific information about the PREA grievance which Newton mentioned. For purposes of this initial review, the Court will accept that the grievance is protected conduct. But, a simple pat-down—and Plaintiff alleges nothing more here—is an ordinary incident of prison life.

Plaintiff allegations permit an inference of retaliatory intent with respect to the first Interference-with-the-Administration-of-Rules misconduct. (*Id*., PageID.10, ¶¶ 50-53.) The misconduct was, on its face, motivated by Plaintiff's PREA hotline calls. Moreover, the prospect of Class II misconduct punishment and the punishment actually imposed rise to the level of adverse action. *Maben v. Thelen*, 887 F.3d 252, 266-67 (6th Cir. 2018). Nonetheless, Plaintiff's claim fails with respect to the first misconduct because it is based on Plaintiff's abuse of the PREA hotline—Plaintiff called dozens of times in a short period—thus, his conduct was not protected.

Plaintiff's allegation that his pin was cancelled in retaliation for making two calls on the PREA hotline to Defendant Washington's office using the anonymous pin provided for such calls (Compl., ECF No. 1, PageID.11), is so scant it is impossible to determine whether Plaintiff has stated a claim. Plaintiff's use of the word retaliation is the only evidence of any link between the cancellation of Plaintiff's pin and the two phone calls. Moreover, Plaintiff does not attribute the cancellation of his pin directly to any Defendant. Instead, he vaguely states "Washington, Horton, Brown, Miller, and PC Newton played their role in shutting down Plaintiff['s] pin number[.]" (*Id*.) "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to do so with respect to any Defendant in his allegations regarding the cancellation of his telephone pin number.

Plaintiff's adequately alleges all of the *Thaddeus-X* elements with respect to the second Interference-with-the-Administration-of-Rules misconduct. That misconduct is based on

Plaintiff's PREA report against Defendant Newton claiming that Newton removed Plaintiff's third-party PREA grievance from the unit kite-box. (Compl., ECF No. 1, PageID.12-13.) If Plaintiff is telling the truth about Defendant Newton, his grievance is nonfrivolous and protected under the First Amendment.[6] On the other hand, if Plaintiff is not telling the truth, his grievance would not be protected because it is frivolous or, alternatively, because it violates prison regulations. MDOC Policy Directive 03.02.130 ¶ L. "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus–X*, 175 F.3d at 395. Plaintiff alleges that his grievance statements regarding Defendant Newton were true. The Court must accept that allegation as true at this stage of the litigation.

If Plaintiff's conduct in filing the grievance was protected by the First Amendment, the actions of Defendant Belanger in pursuing a false Class II misconduct charge against Plaintiff for filing the grievance was, on its face, plainly motivated by the protected conduct. Moreover, the threat of punishment from a Class II misconduct, and the actual loss of privileges that followed the finding of guilt here, constitute adverse action. *Maben*, 887 F.3d at 66-67. Accordingly, Plaintiff's allegations suffice to state a claim against Defendant Belanger for retaliation in violation of the First Amendment. That is the only First Amendment retaliation claim stated in Plaintiff's complaint.

## V.    Eighth Amendment

Plaintiff claims that Defendants were deliberately indifferent to his health and safety because they failed to prevent Plaintiff from being sexually harassed; failed to prevent Plaintiff from being retaliated against; sexually harassed Plaintiff; and subjected him to

---

[6] Because Plaintiff's third-party PREA grievance was based on conduct directed to another prisoner, it may not have been protected conduct. Nonetheless, it was certainly permitted conduct and not, on its face, frivolous. MDOC Policy Directive 03.03.140 (Eff. Apr. 24, 2017) ¶ Y. Thus, the subsequent grievance alleging Newton's interference with Plaintiff's third-party PREA grievance, if true, would not have been frivolous either.

substandard and deplorable living conditions. Essentially, Plaintiff claims that every act by Defendants that he described as "adverse" for his retaliation claim also violated his Eighth Amendment rights.

The *Thaddeus-X* court made clear that simply because an action is sufficiently adverse to deter the exercise of First Amendment rights, that does not mean it is redressable as an Eighth Amendment violation. *Thaddeus-X*, 175 F.3d at 397 n.13. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant

official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Although more frequent than normal pat-downs, cell searches, meal inspections, strip searches, property deprivations, threatened misconduct tickets, and threatened transfers to more restrictive housing, including segregation, might deter the exercise of First Amendment rights, they do not deprive a prisoner of the basic necessities nor do they constitute a serious risk to health or safety. Plaintiff's claims of thrice weekly cell searches or frequent pat-downs do not rise to the level of Eighth Amendment violations. Similarly, Plaintiff's deprivations of contact lenses; deprivation of soap, toothpaste, and deodorant for three days; or his smelly pair of shoes, do not constitute intolerable conditions of confinement.

The total of seven days of toplock[7] is neither cruel nor unusual punishment. "'[P]lacement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)); s*ee also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The less severe restrictions of toplock, therefore, are the same sort of routine discomfort. *See, e.g., Drobil v. Brown*, No. 91-1039, 1991 WL 86295 (6th Cir. May 24, 1991); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254 (6th Cir. Aug 3, 1998). A few days on toplock does not violate the Eighth Amendment.

---

[7] The MDOC policy directive regarding prisoner discipline describes toplock as "confinement to quarters." MDOC Policy Directive, 03.03.105D.

Nor do Plaintiff's allegations of verbal harassment rise to the level of Eighth Amendment violations. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim based on the name-calling described above.

Plaintiff's allegations of sexual harassment also fall short. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery,* 158

F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

Here, the only "sexual harassment" claims that go beyond name-calling or the conclusory statements that Plaintiff was "sexually harassed" are the claims relating to Defendant Cicco's strip-search of Plaintiff on June 20, 2018. If true, Defendant Cicco's conduct toward Plaintiff was reprehensible, but it does not rise to the level of an Eighth Amendment violation. Plaintiff does not allege that Defendant Cicco ever touched him or had any form of physical contact with him. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See Morales*, 278 F.3d at 132; *Zander*, 1998 WL 384625, at *2. Therefore, Plaintiff's allegations of sexual harassment fail to state an Eighth Amendment claim.

Finally, because the alleged retaliatory conduct did not endanger Plaintiff's health or safety, a Defendant's failure to prevent the conduct cannot constitute a deliberate indifference to Plaintiff's health or safety.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bauman, Immel, Master, Huble, Contresrass, Lancour, Monticello, Johns, Olsen, Corey, Robinson, Haase, Thompson, Deary, Haske, Bennett, Newton, Butler, Wonnacott, Durant, Brown, Miller, McLean, Bigger, Wilkins, Shimmelpenny, Dewit, Cicco, McKinney, Stabiel, Lemmerman, Washington, Carlson, Salisbury, the Quartermaster Staff, the Property Room Staff, the Alger Correctional Facility, and the Chippewa Correctional Facility will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An order consistent with this opinion will be entered.


Dated:     November 28, 2018          /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      CHIEF UNITED STATES DISTRICT JUDGE