UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DONNELL WILLIAMS #225280,

        Plaintiff,

v.

HEIDI WASHINGTON, et al.,

        Defendants.
_____/

Case No. 2:18-cv-00144

Hon. Robert J. Jonker
U.S. District Judge

## **REPORT AND RECOMMENDATION**

### **Introduction**

This report and recommendation addresses (1) Defendant Belanger's motion for summary judgment for failure to exhaust administrative remedies, and (2) Plaintiff Williams' motion for a temporary restraining order. (ECF Nos. 18 and 4.) The undersigned respectfully recommends that this Court deny both motions.

### **Relevant Procedural History**

On August 29, 2018, Plaintiff Donnell Williams filed this case pursuant to 42 U.S.C. § 1983. (ECF No. 1.) He alleged that prison officials violated his rights while he was confined at the Alger Correctional Facility (LMF) in Munising, Michigan, and later at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. Plaintiff's complaint concerned events occurring from October of 2017 to August of 2018. He named 12 individuals who are or were employees of LMF, and 20 individuals who are or were employees of URF.

About two weeks after filing his complaint, Plaintiff filed a motion for a temporary restraining order pursuant to Fed. R. Civ. P. 65(a)(1). (ECF No. 4.) Plaintiff asked that all defendants named in his complaint be enjoined from acts including: (1) filing false and retaliatory misconducts against Plaintiff, (2) harassing Plaintiff, (3) conducting skewed investigations into Plaintiff's Prison Rape Elimination Act ("PREA") complaints, (4) issuing orders for other prisoners to harm Plaintiff, and (5) covering up sexual abuse and harassment. (*Id.*)

On November 28, 2018, U. S. District Court Chief Judge Jonker issued an opinion dismissing all of Defendants except one: URF Sergeant Belanger. Plaintiff's sole claim against Defendant Belanger alleges that she wrote a Class II misconduct report against Plaintiff on July 24, 2018, in retaliation for his filing of complaints and grievance exercising his first Amendment rights. (ECF No. 7, PageID.69-70.)

Defendant Belanger has filed a motion for summary judgment (ECF No. 18) on the ground that Plaintiff failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act (PLRA; 42 U.S.C. § 1997e). Defendant argued that Plaintiff's case should be dismissed because he failed to allege retaliation during his misconduct hearing on July 31, 2018. Plaintiff filed a response. (ECF No. 21.) He argued that he did, in fact, allege retaliation during the misconduct hearing. In a reply brief, Defendant noted that Plaintiff's reference to retaliation in his appeal of his misconduct hearing also did not exhaust his administrative remedies. (ECF No. 24.) Plaintiff then filed a supplemental response. (ECF No. 28.)

**Plaintiff's Allegations and Facts**

Plaintiff's claim against Defendant, URF Sergeant Lisa Belanger, alleges that, on July 24, 2018, she filed a Class II misconduct report against him for filing a complaint and grievance against another prison official. (ECF No. 1, PageID.12.) While numerous events are referenced in Plaintiff's Response to Defendant's Motion for Summary Judgment, the events giving rise to the claim at hand began when the Plaintiff allegedly witnessed Prison Counselor ("PC") Newton remove Plaintiff's third-party PREA grievance from the kite box on July 6, 2018. (*Id.*) In response, Plaintiff filed a PREA complaint and grievance against PC Newton. (*Id.*) Following these events, Defendant wrote a Class II misconduct report against Plaintiff for Interfering with Administrative Rules based on the "false" complaint that Plaintiff filed against PC Newton on the PREA hotline. (ECF No. 19-3, PageID.134.) Defendant included a copy of this misconduct report as an attachment to her motion for summary judgment. It is shown below:

| MICHIGAN DEPARTMENT OF CORRECTIONS <br> **MISCONDUCT REPORT** | | | | | CSJ-228 <br> 10/10  4835-3228 |
|---|---|---|---|---|---|
| Prisoner Number: <br> 225280 | Prisoner Name: <br> Williams | | Facility Code: <br> URF | Lock: <br> C-154 | Violation Date: <br> 7/19/2018 |
| Time and Place of Violation: <br> 0610 C unit prisoner phone | | | Contraband Removal Record Provided to Prisoner? <br> ☐ Yes   Date _____   ☒ N/A | | |
| Misconduct Class: ☐ I  ☒ II  ☐ III | | Charge(s): Interferrence With the Administration of Rules | | | |
| Describe Violation (If contraband involved, describe in detail; identify any other employee witnesses): <br> Prisoner Williams 225280 called the PREA hotline on multiple dates including 7/19/18 alleging that PC Newton removed and destroyed a third party PREA grievance that he filed. The grievance was received in the PREA office. There is No Evidence to support this allegation. Had this allegation been proven true PC Newton would have faced disciplinary action. Prisoner Williams knowingly made a false claim of misconduct against PC Newton intending to impede the disciplinary process. <br> ID by state ID and Otis face sheet | | | | | |
| Reporting Staff Member's Name (Print) <br> Sgt. Belanger | | Reporting Staff Member's Signature | | Date and Time Written <br> 7/24/2018 1315 | |

(ECF No. 19-3, PageID.134.)

Resident Unit Manager (RUM) S. Thompson conducted a hearing on this misconduct report on July 31, 2018. RUM Thompson issued his hearing report on August 1, 2018. RUM Thompson found Plaintiff guilty of the charge and sentenced him to 4 days in "toplock."[1] RUM Thompson's hearing report is shown below.

| | |
|---|---|
| **MICHIGAN DEPARTMENT OF CORRECTIONS** | CSJ-229 10/10 |
| **CLASS II AND III MISCONDUCT HEARING REPORT** | |

**GENERAL INFORMATION**

| Prisoner Number | Prisoner Name | Facility Code | Violation Date |
|---|---|---|---|
| 225280 | Williams | URF West | 7/19/18 |

**MISCONDUCT VIOLATION**

| Hearing | Misconduct Charges |
|---|---|
| Class II ☒ | 423 Interference With the Administration of Rules |
| Class III ☐ | |

Misconduct Charge if Changed by Hearing Officer

Plea: ☐ Guilty  ☒ Not Guilty

**WAIVER OF HEARING**

I understand I have a right to a hearing. I waive my right to a hearing and plead guilty to all charges. I also waive my right to appeal and accept the sanctions imposed.

Prisoner's Signature | Date

**HEARING REPORT (Do Not Complete If Hearing Waived)**

Evidence and/or prisoner statement in addition to misconduct report:
Sgt Belanger stated that Prisoner Williams called the PREA hotline on multiple dates alleging that PC Newton removed and destroyed a third party PREA grievance that he filed. Sgt Belanger added that grievance was received in the PREA office and that there is no evidence to support this allegation. Prisoner Williams stated, "I turned my PREA grievance in and PC Newton removed it from the box illeagly."

Reasons for findings:
Prisoner Williams is found guilty based on his and Sgt Belanger's statements. This respondent finds Sgt Belanger to be credible in that Prisoner Williams made false allegations on PC Newton for destroying his PREA grievance.

**FINDINGS**

| | | | | |
|---|---|---|---|---|
| Charge 1 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | CMIS Code 423 |
| Charge 2 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | CMIS Code ___ |
| Charge 3 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | CMIS Code ___ |
| Charge 4 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | CMIS Code ___ |

**SANCTIONS** (Hearing Investigator enters begin and end dates)

| 4 | Days Toplock | Begins: 8/3/18 | Ends: 8/7/18 | ☐ Counseling/Reprimand (Class III only) |
|---|---|---|---|---|
| ___ | Days Loss of Privileges | Begins: ___ | Ends: ___ | |
| ___ | Hours Extra Duty | Begins: ___ | Ends: ___ | ☐ $___ Restitution (Class II only) |

Property Disposition if Applicable: ___

Misconduct Hearing Report given to Hearing Investigator for Delivery to Prisoner this date: ___

| Hearing Officer's Name (Print) | Hearing Officer's Signature | Hearing Date |
|---|---|---|
| RUM S. THOMPSON | | 7/31/18 |
| Hearing Investigator's Name (Print) | Hearing Investigator's Signature | Date |
| 41. Durast | | 8/1/18 |

Distribution: Counselor File; Record Office File (Class II); Prisoner

(ECF 19-3, PageID.133.)

---

[1] Toplock is confinement to quarters. *See Maben v. Thalen*, 887 F.3d 252, 266 (6th Cir. 2018).

RUM Thompson's report includes no indication that Plaintiff claim that Defendant wrote the misconduct report against Plaintiff in retaliation for earlier actions by Plaintiff. Plaintiff, however, claims that he raised the issue of retaliation in the hearing but that the RUM in charge of writing the report did not include the issue. (ECF No. 28, PageID.209.)

After being found guilty of the misconduct at the hearing, Plaintiff filed an appeal pursuant to the MDOC Policy Directive 03.03.105. He claimed that Defendant filed the misconduct in order to retaliate against him for his PREA complaint against PC Newton. (ECF No. 21-1, PageID.150.) His appeal – with highlighting where he mentions Defendant Belanger – and the appeal response are shown below.

> Case 2:18-cv-00144-RJJ-MV   ECF No. 21-1 filed 04/01/19   PageID.150   Page 6 of 31
>
> **Falsifying and Altering Documentation** 8.2.18
>
> MICHIGAN DEPARTMENT OF CORRECTIONS
> CLASS II AND CLASS III MISCONDUCT APPEAL "Vidio and Audio Tapes"
> Pd 05.03.130.
>
> CSJ-274 10/10 4835-3274
>
> **INSTRUCTIONS**
> 1. This form is to be used SOLEY for appealing Class II and Class III hearing decisions. If a Class II or Class III decision was combined with a Class I hearing decision, a Request for Rehearing (CSJ-418) must be filed.
> 2. This form must be submitted within 15 calendar days after receipt of the hearing officer's written decision.
> 3. Class II hearing decisions are appealed to the Deputy Warden.
> 4. Class III hearing decisions are appealed to the Assistant Deputy Warden (ADW). (NOTE: Prisoners at Woodland Center Correctional Facility (WCC) and the Women's Huron Valley Correctional Facility (WHV) appeal to a Captain designated by the Warden.)
> 5. State your reason for appeal.
> 6. Attach a copy of misconduct and hearing report.
>
> 28 CFR 115-67 Agency protection against retaliation
>
> A rehearing shall be ordered if any of the following are found to have occurred:
> a. The hearing was not conducted pursuant to Department policies and procedures and the departure from policy and procedure resulted in material prejudice to the prisoner.
> b. The prisoner's due process rights were violated.
> c. The decision of the hearing officer is not supported by the evidence on the record. Pd 03.03.130 & Pd 02.03.100.
>
> | Prisoner's Number | Name | Block/Unit Number | Cell/Room Number | Date of Incident |
> |---|---|---|---|---|
> | 225280 | Williams | C-154 | C-154 | 7/19/2018 |
>
> | Date of Hearing | Misconduct Class: ☒ II ☐ III | Charge(s) | Sentence |
> |---|---|---|---|
> | 7-31-2018 | | Interferrence with the Ad. of Rules | Toplock 4 days |
>
> **BRIEFLY DESCRIBE THE BASIS OF YOUR APPEAL:** I object to this Class #2, Misconduct decision by Rym-Shane Thompson, who refuse to allow me to present Evidence, and a hearing Investigator to Investigate my issue. I have sent numerous Kites to H.I. Mr. Duranti and two respond to my Kites. On July 06, 2018, I witness PC. Ms. Newton come out of D-Unit to C-Unit at about 9:40 to 9:50AM take out of the Kite & CD. Box a third party ❖ PREA Grievance, I wrote for inmate Payton #571203, I have filed numerous Complaint over the PREA Hotline. This was a written Complaint that, I was never given "Notice of Complaint being Filed. I am requesting for all PREA Hotline, and Cameras to be held accordence to Pd 05. 03.130. Vidio and Audio Tapes" The hearing was not conducted pursuant to Department policies and procedures and the departure from policy and procedure resulted in material prejudice to the Prisoner, My due process rights has been Violated. The decision of The Hearing Officer is not supported by the evidence on record. Sgt. Ms. Belanger Falsifyed, and Alter documentation (do not write below this line) in retaliation for Co-Worker.
>
> **APPEAL RESPONSE:**
> THIS HEARING WAS HELD IN ACCORDANCE WITH ADMINISTRATIVE RULE 791.3310 AND POLICY DIRECTIVE 03.03.105. THE HEARINGS OFFICER DETERMINED BY A PREPONDERANCE OF THE EVIDENCE THAT THE PRISONER WAS GUILTY OF THE STATED CHARGE. THE PRISONER HAS NOT PROVIDED ANY SUBSTANTIATED EVIDENCE THAT WOULD WARRANT OVERTURNING THIS HEARING. NO DUE PROCESS VIOLATION EXISTS.
> **APPEAL IS DENIED**
>
> ☒ Disapproved  ☐ Approved  ☐ Returned without action – not filed within 15 days
>
> Signature of Warden; Deputy Warden (Class II); Signature of ADW/WCC/WHV Captain (Class III): A/DW
> Date: 8/7/18
>
> DISTRIBUTION: WHITE – Deputy Warden (Class II); ADW/WCC/WHV Captain (Class III); CANARY – Retained by Prisoner

(ECF No. 21-1, PageID.150.)

    The records provided by the parties provide no indication that Plaintiff sought a re-hearing to address his retaliation claim.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher

hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel*, 270 F.3d at 1056 (citing 11 James William Moore, et al., *Moores Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215

8

F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

Generally speaking, prisoners in the custody of the Michigan Dept. of Corrections (MDOC) must exhaust their administrative remedies through the grievance process. As will be explained below, the grievance procedure did not apply in this case because Plaintiff was required to raise his retaliation claim in his misconduct hearing. Nevertheless, a brief summary of the grievance procedure is included because the underlying principles are relevant to the exhaustion issue in this case.

MDOC Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to

resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity'

10

>to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance

procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct ticket, the inmate must first raise that issue during the misconduct hearing and appeal any adverse decision before administrative remedies will be considered exhausted. Under Michigan a law a prisoner must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Parker v. Gainer*, W.D. Mich. Case No. 1:16-cv-1302, ECF No. 67 at PageID.337 (April 2, 2018) (stating that "[a]llegations of retaliation via misconduct tickets are properly raised at misconduct hearings—accordingly, retaliation claims addressed at a hearing cannot be grieved. . . It follows, then, that a retaliation claim is exhausted at the hearing stage if a prisoner raises the retaliation issue") (citing *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011)). But, when a prisoner fails to raise retaliation during the hearing on his misconduct ticket and fails to seek rehearing on that issue, the prisoner has failed to exhaust his administrative remedies.

> Because the ordinary grievance procedure does not apply to disputes arising out of misconduct hearings, the prisoner must instead raise the issue in the misconduct hearing. *See Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011). In other words, "where a grievance relates to the issuance of major misconduct reports, ... Michigan rules provide that

13

> the only avenue for challenging such reports is a hearing." *Id.* (emphasis added).
>
> If the prisoner does not successfully resolve the dispute at the misconduct hearing, he must "file a motion or application for rehearing in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." *See* Mich. Comp. Laws § 791.255(1); *Palmer v. Aiken*, No. 2:12-cv-309, 2014 WL 581682, at *3 (W.D. Mich. Feb. 14, 2014). The rehearing request must be made within thirty days after the final decision or order is issued. Mich. Comp. Laws § 791.254(3).

*Smith v. Goulet*, No. 1:17-CV-618, 2018 WL 3688468, at *2 (W.D. Mich. Aug. 3, 2018), *appeal dismissed,* No. 18-1937, 2018 WL 6118451 (6th Cir. Aug. 22, 2018).

### Analysis of Exhaustion Issue

Citing *Siggers v. Campbell* and *Smith v. Goulet*, Defendant contends that Plaintiff failed to exhaust his administrative remedies because he did not allege retaliation during his initial misconduct hearing on July 31, 2018. (ECF No. 18, PageID.122.) In response, Plaintiff claims that he told the RUM in charge of the hearing that he was being retaliated against by Defendant, but that the RUM chose not to disclose this claim on the misconduct hearing report. (ECF No. 28, PageID.209.)

Defendant is correct as to the initial misconduct hearing: the record does not give any indication that Plaintiff raised a retaliation claim during this hearing. Plaintiff's subsequent claim that he told the RUM that the misconduct report was retaliatory in nature during the initial misconduct hearing is of no moment because "[a]rguments in parties' briefs are not evidence," *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006). Furthermore, Plaintiff has failed to make this claim in any sworn document that would be considered evidence.

But this does not end the inquiry. The evidence before this Court indicates that Plaintiff did include a claim of retaliation in his appeal. (ECF No. 21-1, PageID.150.) The hearing officer apparently conducted a hearing on the appeal and then issued a denial. The ruling segment of the appeal document is repeated below.

> **APPEAL RESPONSE:**
> THIS HEARING WAS HELD IN ACCORDANCE WITH ADMINISTRATIVE RULE 791.3310 AND POLICY DIRECTIVE 03.03.105. THE HEARINGS OFFICER DETERMINED BY A PREPONDERANCE OF THE EVIDENCE THAT THE PRISONER WAS GUILTY OF THE STATED CHARGE. THE PRISONER HAS NOT PROVIDED ANY SUBSTANTIATED EVIDENCE THAT WOULD WARRANT OVERTURNING THIS HEARING. NO DUE PROCESS VIOLATION EXISTS.
> **APPEAL IS DENIED**
>
> ☒ Disapproved  ☐ Approved  ☐ Returned without action – not filed within 15 days
> Signature of Warden; Deputy Warden (Class II); Signature of ADW/WCC/WHV Captain (Class III)   Date 8/7/18
> A/DW
> DISTRIBUTION: WHITE – Deputy Warden (Class II); ADW/WCC/WHV Captain (Class III); CANARY – Retained by Prisoner

(ECF No. 21-1, PageID.150.)

This ruling gives no indication of whether the officer hearing the appeal considered Plaintiff's retaliation claim or rejected it. Either is possible. As noted in *Mattox*, 851 F.3d at 590-91 and *Reed-Bey*, 603 F.3d at 325, when prison officials waive a procedural irregularity and rule on a grievance, a prisoner may be found to have exhausted his administrative remedies. That may be what happened in this case. Based on the record before this Court, a definitive answer is not available. The cases cited by Defendant do not lead to a different conclusion.

As explained in *Woodford v. Ngo*, the exhaustion requirement protects "administrative agency authority" and "promotes efficiency." 548 U.S. at 89. In this case, the record before the Court does not clearly indicate (1) that the MDOC was

denied an opportunity to hear and address Plaintiff's retaliation claim, or (2) that Plaintiff failed to exhaust his administrative remedies.

Accordingly, the undersigned recommends that this Court find that Defendant Belanger has not shown that there is no genuine issue of material fact. Fed. R. Civ. P. 56(a).

## Injunctive Relief Standard

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *Glover v. Johnson*,

855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

### Likelihood of Success on the Merits

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989).

Plaintiff has failed to satisfy his "initial burden." Plaintiff's motion for injunctive relief is based on the full range of claims in his initial complaint. But as explained in the *Relevant Procedural History* of this report and recommendation, Chief Judge Jonker dismissed all defendants except one – URF Sergeant Belanger – and all claims except one – Plaintiff's claim of retaliation by Belanger on July 24, 2018. (ECF No. 7.) Plaintiff's motion for a temporary restraining order (ECF No. 4) does not mention Defendant Belanger with any specificity and makes no claims as to the likelihood of success in his case against her. Thus, Plaintiff has failed to satisfy his "initial burden" of showing a strong or substantial likelihood of success on the merits of what remains of his Section 1983 action.

Plaintiff has also failed to assert facts showing (1) the likelihood of irreparable injury if the preliminary injunction does not issue, (2) the absence of harm to other

17

parties, and (3) the protection of the public interest by issuance of the injunction that could establish that he will suffer irreparable harm in the absence of an injunction.

It should be noted that any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). Plaintiff simply has not made the necessary showing here.

## Conclusion and Recommendation

I respectfully recommend that this Court (1) deny Defendant Belanger's motion for summary judgment (ECF No. 18) because she has not shown that there is no genuine issue of material fact relating to Plaintiff's exhaustion of administrative remedies, and (2) deny Plaintiff's motion for a temporary restraining order (ECF No. 4) because Plaintiff has not made the necessary showing with regard to any of the factors the Court must consider in issuing such an order.

Dated:  June 12, 2019                                /s/ *Maarten Vermaat*
                                                                        MAARTEN VERMAAT
                                                                        U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).